WIESENFELD, STERN & CO. v. BYRD.

1. Since the adoption of the code of procedure, under whose provisions actions at law and in equity are prosecuted with the same forms, and separate judgments may be entered against the several defendants, there is no objection to a single action against a surviving partner and the representatives of a deceased partner.
2. Whether an allegation in the original complaint of the survivor's insolvency was necessary or not (and it would seem not), that objection cannot prevail after evidence introduced to prove it, an amendment allowed by the judge charging it, and the verdict of the jury finding it.
3. There was no error in permitting such amendment at the trial.
4. Where a surviving partner makes payments with partnership funds to a creditor of the firm, who is also a creditor of the survivor individually, the creditor must apply the payments to the partnership debt, although no direction was given for their application.
5. Partnership assets cannot be applied to the extinguishment of a higher rate of interest than that established by law upon an agreement made by the survivor with the creditor to which the other partner then deceased was no party.

Before PRESSLEY, J., Darlington, April, 1881.

Action by Wiesenfeld, Stern & Co. against James E. Byrd and R. Sydney Smith, as executors of Jesse Keith, and Kate Keith as administratrix of Jesse E. Keith.

The Circuit decree thus states the case :

Jesse Keith and his son Jesse E. Keith were partners in trade until the death of Jesse, on 29th April, 1873. The son qualified as executor of his father, and obtained leave from the Probate judge to continue the partnership for that year. It had already made advances to many customers which required further advances by them until the crop could be gathered. To enable the partnership to comply with those contracts, plaintiffs furnished the money before and after the death of Jesse Keith. They also furnished money during the panic in the fall of that year, wherewith Jesse E. Keith paid off several pressing creditors of the partnership.

From time to time, before and after the death of Jesse Keith, produce for sale was sent to plaintiffs in the name of

the partnership, and they, without any instructions as to the application of the proceeds, credited the same on a general partnership account, making no distinction between the part due before the death of Jesse Keith and that contracted thereafter. There is no proof as to how Jesse E. Keith obtained the produce sent by him to plaintiffs after April 29th, 1873. The presumption is that he got it from customers to whom advances had been made before and after that time. Plaintiffs charge twelve per cent interest on their advances, and seek in their suit to secure the unpaid balance, with that rate of interest. Jesse E. Keith died before the suit. During his lifetime he frequently admitted, by letter and by entries in his books, the plaintiffs' claim, but there is no proof that Jesse Keith ever admitted their rate of interest.

The jury having been instructed to find specially on several questions of fact, rendered their verdict thus: "We find for the plaintiffs the amount sued for, except a deduction of interest from twelve to seven per cent after the death of Jesse E. Keith." "We further find that the estate of Jesse E. Keith is insolvent." As they failed to find the rate of interest chargeable to Jesse Keith, that being one of the matters submitted to them, that matter, by consent, is left with me, and I find that he is chargeable only with seven per cent interest.

Now plaintiffs' attorneys move for judgment in their favor on the said findings, and the attorneys of Jesse Keith oppose the motion as to him, on grounds urged by them before the verdict, to wit: 1st. Because the action cannot be maintained against his executors, there being no *allegation* or sufficient proof of the insolvency of the surviving partner; 2d. Because the credits admitted by plaintiffs overpay the balance due them at the death of Jesse Keith, and his estate is not responsible for the subsequent business carried on in the name of the partnership. They further oppose judgment at this time against his executors, claiming that the partnership assets and the estate of the surviving partner must be exhausted before resort to the estate of Jesse Keith.

As there was some proof without objection of the insolvency of Jesse E. Keith, the code required me to permit amendment

of plaintiffs' *allegations*, so as to make them agree with the testimony. That being considered as allowed, the verdict of the jury settles the question of Jesse E. Keith's insolvency.

As to their second ground, I assume that the estate of Jesse Keith is not liable for the debt incurred to plaintiffs after his death, though it is probable. Equity, under the facts proved herein, would, in a proper case, validate the act of the executors, who continued the partnership business, as best for the estate. Waiving that consideration, and regarding the partnership as ended at Jesse Keith's death, it does not follow that it is entitled to be credited with the payments made by Jesse E. Keith after that time. There were no instructions by him as to the application of these payments, and the credits by plaintiffs are on a general account, which includes all their charges to the end of all their advances to him. I cannot hold that credits in that form constitute a special application by plaintiffs of said payments to that portion of their account which accrued before the death of Jesse Keith.

If they had kept two accounts, one with Jesse Keith & Son, and another with Jesse E. Keith, and had credited payments made by him to the account of Jesse Keith & Son, that would have been a special application, which I could not permit them to change. But in this case they have placed their credits on an account in which the debits of Jesse Keith & Son and of Jesse E. Keith are blended. There is, therefore, no special application of the payments to either account, and I allow plaintiffs now to apply them according to their right. Receiving said payments from Jesse E. Keith, without directions by him as to their application, they had the right to apply them, even if they were partnership assets, in payment of their advances to him to pay partnership creditors as used by him for advances to customers with whom the partnership had so contracted, and I allow the said credits now to be so applied.

As to the delay of judgment against the executors of Jesse Keith until the other sources be exhausted, my judgment is that such power is not to be exercised unless the party seeking it points out assets from which the creditors may surely obtain payment.

It is therefore ordered and adjudged, that all the credits on plaintiffs' account, after April 29th, 1873, be applied to their charges after that time, until the said advances, with 12 per cent interest, be wholly paid. It is further ordered and adjudged, that the remainder of said credits be applied to the partnership account as it would stand at the death of Jesse Keith, that account to carry interest at 7 per cent until the last credit be applied. From that date the balance is to bear interest against Jesse Keith at 7 per cent and against Jesse E. Keith at 12 per cent until his death and at 7 per cent thereafter. Let the clerk of the court make the calculation, and state the account in accordance with this order, and let the plaintiffs enter judgment against the executors of Jesse Keith and the administratrix of Jesse E. Keith, respectively, for the several amounts thus to be ascertained by the clerk.

The exceptions are substantially stated in the opinion.

Mr. *B. W. Edwards*, for appellants.

Messrs. *G. W. Dargan* and *E. Keith Dargan*, contra.

April 11, 1882. The opinion of the court was delivered by

Mr. CHIEF JUSTICE SIMPSON. Jesse Keith and his son Jesse E. Keith were copartners in trade. While in business they contracted a debt with the plaintiffs for goods furnished and money lent and advanced for their use, evidenced by a running account. Jesse Keith died in 1873, leaving a will in which he appointed Jesse E. Keith and the defendants Byrd and Smith his executors, all of whom qualified.

After his death the survivor continued in business until his death. During this time he sent considerable sums of money to the plaintiffs, and contracted with them other indebtedness. These new debts were charged upon the general account of Keith and son, although the plaintiffs had received notice of the death of Jesse Keith, and the money sent was credited on this general account. The defendant Kate Keith administered on the estate of Jesse E. Keith. This action has been brought against the representatives of both estates to recover the firm debt.

The defendants Byrd and Smith, executors of Jesse Keith, moved to dismiss the complaint upon the ground that the action could not be maintained against the two estates; that the representatives of a deceased copartner could not be joined in an action at law with the survivor, or his representatives. This motion was refused.

It appeared in evidence that Jesse E. Keith, the survivor, had admitted that the firm debt as well as his own debt bore interest at 12 per cent, but there was no evidence that Jesse Keith ever acknowledged this.

The case went to the jury under instructions to find specially on several questions of fact. Their verdict was as follows: "We find for the plaintiff the amount sued for, except a deduction of interest from 12 per cent to 7 after the death of Jesse E. Keith. We find further that the estate of Jesse E. Keith is insolvent." No objection was taken to the form of this verdict. The jury failed to find as to the rate of interest chargeable against Jesse Keith, and this, by agreement, was left to the judge, who found as matter of fact that he was chargeable with 7 per cent.

In the original complaint there was no allegation of insolvency of Jesse E. Keith, the survivor, but evidence was introduced on this subject without objection, and the judge ordered the complaint amended in that respect.

Upon the rendition of the verdict, the judge ordered and adjudged that all credits upon plaintiffs' general account, after April, 1873 (the date of the death of Jesse Keith), he applied to their charges after that date until said advances with 12 per cent interest be wholly paid; that the remainder of said credits be applied to the partnership account as it would stand at the death of Jesse Keith, that account to carry interest at 7 per cent until the last credit be applied; from that date the balance is to bear interest against Jesse E. Keith at 12 per cent until his death, and at 7 per cent thereafter. And the clerk was directed to make the calculation in accordance with this order; which being done, judgment was rendered against the estate of Jesse E. Keith for $2390.26, and against the estate of Jesse Keith for $1586.93, with interest from May 26, 1881.

Byrd and Smith, executors of Jesse Keith, appeal, and present the following questions:

First. "Whether an action at law for the recovery of a firm debt can be sustained against the representatives of a deceased copartner and a survivor jointly;" and if so, must it appear that the survivor had been "exhausted by legal pursuit to insolvency, or properly shown to be insolvent"?

Second. Whether the payments by Jesse E. Keith, the survivor after the death of Jesse Keith, should not have been credited on the firm debt?

Third. Should there not have been an accounting between the two estates before any judgment against the estate of Jesse Keith?

Fourth. Whether the payment by Jesse E. Keith at 12 per cent on the firm debt should have been allowed to the prejudice of the estate of Jesse Keith?

This is a peculiar case, and it is difficult to understand from the pleadings whether it was regarded by the parties to be a case at law or a case in chancery. It partakes of both. In its form it is an ordinary action for the recovery of a debt, and in that respect a law case. In the manner in which it was conducted it has both law and chancery features. A jury was employed as to some of the facts, and the judge found the others; and finally, the clerk acted in the nature of a referee in ascertaining the amount due. We must, however, take it as we find it, and pass upon such questions as the parties have brought before us. The appellant seems to regard it as a case at law, as his first exception raises the question whether an action at law for a firm debt can be sustained against the survivor and the estate of a deceased partner jointly.

It will be conceded that this could not have been done under the former practice. Contracts, when entered into by two or more persons as makers, may be either joint, or joint and several, or several. Whether a contract was the one or the other determined the fact, under the common-law doctrine and modes of action, whether all of the parties should be joined in one action, or whether they should be sued separately. If joint, they could not be sued separately. If joint and

several, they could be joined or severed.  If several, they could not be joined.  The old forms were inflexible, and allowed no · exceptions.

There was this difference as to joint contracts from the others: Upon the death of a joint obligor, such obligation ended as to him, and became concentrated on the survivor. This was absolutely so, until at length equity began to afford relief against the estate of the deceased; but at no time could the estate of the deceased be brought into the law courts. This principle, however, did not apply to contracts which were several, or joint and several.  In such cases, upon the death of one of the debtors the right of action at law still existed against the deceased; but his estate could not be joined in an action against the survivors, not because all parties could not be sued at law, but because separate and distinct judgments were required, that against the deceased being *de bonis testatoris*, and that against the survivor *de bonis propriis*.

Thus it will be seen that whether a partnership debt be a joint, or joint and several, or several debt, under the former practice the survivor and the deceased could not be joined, for the reason that if the contract was joint the equity forms of procedure and the equity courts had to be resorted to as to the deceased, in which the survivor could not be embraced; and, if it was joint and several, or several, while the law courts and forms of action were available in such cases, yet a separate judgment was demanded, and the old forms did not allow a double judgment in a case.

Has the code made any change in this respect?  The code has not altered the principles upon which a right of action accrues, nor has it diminished, enlarged, or in any manner changed the grounds of action.  It has given no new course of action nor has it taken any away.  Both legal and equitable rights remain as before, and the invasion of either is as actionable as ever.  But it has consolidated the two courts, and, abolishing all previous forms of action in both, has substituted one form for all classes of injuries, whether legal or equitable, so that now all parties must apply to the same court and enter it by the same proceeding.

Such being the case, there is no longer any objection to joining both legal and equitable causes in the same action; and it would seem that where a party has the same cause of action against two or more, which formerly on account of the different forms of proceeding he had to enforce in separate courts, now that the forms are the same and the courts the same, there should be no objection to joining them in the same action. The reason for the previous difference ceasing, the difference itself should cease also.

The states which have adopted the code are not all uniform in their decisions on this question. But in this state we have held that there is no difficulty in rendering separate judgments, and in the ordinary cases of joint obligations the representatives of a deceased obligor may be joined with the survivors. *Trimmier* v. *Thomson*, 10 *S. C.* 164; *Susong* v. *Vaiden*, 10 *S. C.* 247. If this can be done, as it was in these two cases, upon a joint bond or note, why should not the same principle and practice apply to a copartnership debt? There is no reason.

As to the question of alleging and proving insolvency of the survivor before holding the estate of the deceased responsible. In the case of *Wardlaw* v. *Heirs of Gray*, 2 *Hill Ch.* 644, it was incidentally said, "If the survivor is insolvent equity always affords relief." The case did not require the consideration of the question whether the deceased could be proceeded against before insolvency of the survivor; but it appearing in the case that the survivor was insolvent, it was held sufficient.

In *Collyers on Partnerships*, § 604, we find the following: "It is now established beyond controversy, that, in the consideration of courts of equity, a partnership debt is several as well as joint, and that upon the death of a partner the joint creditor has a right in equity to proceed immediately against the representatives of a deceased partner for payment out of his separate estate, without reference to the question whether the joint estate is solvent or insolvent, *or to state the accounts amongst the partners.*"

In *Parsons on Partnership*, p. 447, it is said: "Thus, after

8

some conflict and uncertainty, it seems now to be settled in England, that on the death of a partner a creditor of the firm may proceed at once in equity against the estate of the deceased, whether the firm or the surviving partners be insolvent or otherwise; the court requiring, however, that the surviving partners should be made parties, because they are interested in the account."

Reserving the question whether the doctrine as laid down by these two writers, in its broad extent, applies in this state, it is enough in this case that the jury found as matter of fact that the survivor was insolvent. We think the finding was sufficient. We think also that the complaint was properly amended. Code, § 196. *Ahrens* v. *State Bank*, 3 *S. C.* 410.

Next as to the application of the payments made by the survivor after the death of his copartner. The general rule as to payments is, that where the debtor directs no application at the time of payment the creditor may make the application at any time before judgment or verdict. *Brice* v. *Hamilton*, 12 *S. C.* 32. If neither apply the payments, the court will make such application as shall be reasonable and proper. *Jones* v. *Kilgore*, 2 *Rich. Eq.* 66.

This no doubt is the governing principle where the party making the payment is the principal debtor and the payments are made from his own funds, but should it apply where there is a joint debt as well as an individual one and the payments are made from joint funds? We think not. In such a case the payment should go to the credit of those to whom the money paid rightfully belongs. 'Tis true, upon the death of a copartner, the partnership property legally belongs to the survivor. The death of one dissolves the partnership, and the survivor holds the property. He does not hold it, however, for his own use, but rather in the nature of a trustee, for the settlement of partnership debts, and the winding up of the concern.

A surviving partner is entitled to take and hold as survivor for the purpose of administering the copartnership estate. *Moffat* v. *Thomson*, 5 *Rich. Eq.* 155. Dunkin, chancellor in this case, said further: "The principle is as old at least as the

time of Lord Coke, that copartners constitute an exception to
the rule as to the *jus accrescendi* among joint tenants. *Co.
Litt.* 182 *a*. Though they are joint tenants of all the partner-
ship stock during their lives, there is no survivorship either at
law or equity. It follows that upon the decease of one of
several partners, his share of the stock and effects of the part-
nership subject to the *partnership* debts devolves to his per-
sonal representatives, who thereupon become, both at law and
in equity, tenants in common with the surviving partner. Such
is the doctrine of Kent and Story, and indeed of every elemen-
tary writer on the subject." One partner has no right to apply
partnership funds to his own debt. This is also elementary.

Now in the case before the court, after the death of Jesse
Keith, Jesse E. Keith continued in business with the partner-
ship property on hand. The debts which he afterwards con-
tracted were his individual debts, and the partnership property
was not liable therefor. What proportion of his payments
to plaintiff came from the partnership assets, did not appear
in the case. In fact, no inquiry of that kind seems to have
been made. But whatever sum, if any, did thus originate, the
estate of the deceased should have the benefit of, equally with
the survivor. The money applied was common property and
should result in a common benefit.

As to the interest. The jury found that the survivor had
agreed to pay 12 per cent. There has been no appeal on that
subject, and this finding will not be disturbed. We do not
think, however, that any portion of the partnership assets
should be applied to the extinguishment of this rate of interest
on the single agreement of the survivor. As it appears from
the case, this was his independent contract, which did not bind
the deceased, the judge finding that the deceased was only
bound for 7 per cent. The judgment below must be modified
in accordance with this opinion, and for that purpose the case
is remanded so that it may be determined upon a second trial
what proportion of the payments credited on the general ac-
count of the plaintiff was made out of the partnership assets,
and to that extent the estate of the deceased partner must have
credit on the firm debt as it stood at his death.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the case be remanded for further proceedings in accordance with the principles herein.