REAB v. POOL.

1. In consideration of $500 paid by V to "P, agent," he became a half-owner in a mercantile business conducted by "P, agent," and was to share in its profits and losses. In action by creditors of the partnership thus created, *held*, that V could not show by parol testimony that P was merely agent for his wife, who had never authorized or ratified the agreement; that V had never paid the $500, nor received any profits, and was not known in the business; for if these things were shown, still V would be liable for the partnership debts.

2. The reception of profits is not necessary to make one a partner; it is the agreement to receive that constitutes a test of partnership.

Before NORTON, J., Greenville, March, 1888.

The opinion states the case.

*Messrs. Westmoreland & Haynsworth*, for appellants.

*Mr. John R. Bellinger*, contra.

February 13, 1889. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action against the defendants as partners in the "bar-room and restaurant business" under the firm name of "R. R. Pool, Agent," for an account for goods sold and delivered to them between December 9, 1885, and February 19, 1886. The plaintiffs proved that the goods were sold and shipped to "R. R. Pool, Agent," between the times stated, and then, to prove the partnership, introduced the following contract:

"State of South Carolina. Greenville County. This indenture made and entered into between R. R. Pool, Agent, of the first part, and S. L. Vaughn, of the second part, witnesseth: That the party of the first part, in consideration of $500 to him paid by the party of the second part, does hereby grant, bargain, and sell to the party of the second part, one-half interest in the bar-room and restaurant business, now owned by the party of the first part, on Main street, in the city of Greenville, in the county and State aforesaid; and the party of the first part further agrees to pay all debts against the said business prior to this agreement, and bear one-half of all expenses, and receive one-half of all profits from the date of this agreement. The party of the second part, in consideration of the sum of $500, paid by him to the party of the first part, does hereby agree to receive one-half interest in the bar-room and restaurant business now run by the party of the first part in the city of Greenville; and the party of the second part further agrees to bear one-half of all expenses and receive one-half of all profits from the date of this agreement.

"Witness our hands and seals the 21st day of November, 1885.

"Witness                         R. R. POOL, Agent, [L.s]
"Adam C. Welborn.               S. L. VAUGHN,    [L.s.]"

Endorsed on the back of this contract was the following, which was also introduced in evidence: "The foregoing articles of agreement are hereby declared null and void by mutual consent, and the sale of the above named and undersigned S. L. Vaughn's

one-half interest in said business to Mrs. V. V. Pool, she assuming the payment of all debts and liabilities of said business. This March 23, 1886.                    V. V. POOL,      [L.S.]
                    "BY R. R. POOL, Agent, [L.S.]
                    "S. L. VAUGHN, [L.S.]"

The defendant, Vaughn, denied that any partnership ever existed between him and R. R. Pool, agent, or that he was indebted to the plaintiffs in any amount by reason of said alleged partnership. He proposed to show by parol proof that, at the time of the execution of the articles of partnership, the business conducted under the name of "R. R. Pool, Agent," was the property of his wife, V. V. Pool; that he was merely her agent in said business, and that as such agent he signed the articles, which Mrs. Pool never authorized or ratified; that he (Vaughn) had never paid the $500, as agreed; that he had received none of the profits of the business, and was in fact not known in it. The plaintiffs objected to this testimony, and, the objection being sustained, they had a verdict.

The defendant, Vaughn, appeals to this court upon the following grounds: "I. Because his honor erred in excluding the testimony that the business conducted under the name of 'R. R. Pool, agent,' was owned by his wife, V. V. Pool, and that he was acting merely as her agent in executing the agreement. II. Because he erred in excluding the testimony of R. R. Pool that V. V. Pool had not authorized or ratified said contract. III. Because he erred in excluding the testimony that the defendant, S. L. Vaughn, had not paid the $500 as agreed, that he had received none of the profits and had nothing to with the management of the said business. IV. Because he erred in excluding R. R. Pool's testimony that S. L. Vaughn was not known as a partner in said business. V. Because he erred in refusing to allow S. L. Vaughn to testify for whom R. R. Pool was agent in said business at the time of the execution of the said contract, and for whom he was professing to act in executing it."

The written articles of agreement in express terms stated all the elements necessary for a partnership, and were quite sufficient to introduce Vaughn into the business as a partner from November 25, 1885. That partnership, as the articles clearly

show, was between Vaughn and "R. R. Pool, agent." No mention whatever was made of Mrs. Pool or her alleged ownership of the business. The half interest agreed to be transferred to Vaughn was spoken of as "now owned by the party of the first part" (R. R. Pool, agent), who was to "pay all debts prior to the agreement," and, as stated, received the $500 agreed to be paid, &c. The contract being with Pool as an individual, the word "agent" appended to his name being merely descriptive of his person, we agree with the Circuit Judge that the evidence offered was not merely collateral to the articles of partnership, but tended to change them in several important particulars, and was therefore properly excluded under the well established rule which will not allow parol evidence to contradict or vary a written instrument. *Bulwinkle & Co.* v. *Cramer & Blohme*, 27 S. C., 381. Besides, it was the duty of Vaughn to inform himself as to the character in which Pool undertook to act, and he could not afterwards change, by parol, the terms of his solemn agreement, in order to escape liability under it.

But it is insisted that the word "agent" added to the signature of Pool to the instrument gave Vaughn the right to show that Pool did not contract for himself, but "as agent" of his wife, who, being a married woman, could not make such an agreement, and never authorized it. We think that for such purpose the testimony was "irrelevant." Creditors were suing the partnership alleged to consist of R. R. Pool, agent, and S. L. Vaughn; and the question was, not as to the liability of Mrs. Pool, but of Vaughn. If Mrs. Pool was not bound by her husband's act as agent in making Vaughn a partner, or by her own ratification, in afterwards buying back the interest of Vaughn, Pool undoubtedly made himself personally liable, by undertaking to contract as "agent," without authority and without setting out the name of his principal. "An agent will be held to be personally bound, if the name or character of the principal should not appear on the instrument; or if it should appear that no other person than himself could be legally bound by it, although he should sign his name thereto as agent, or as acting in an official character." See *Story on Agency*, sections 155, 273, and 277; also *Edings* v. *Brown*, 1 Rich., 255, and cases cited. Judge Story says the doc-

trine "rests on a plain principle of justice, for every person acting for another, by a natural if not a necessary implication, holds himself out as having competent authority to do the act, and thereby draws the other party into his reciprocal engagement."

Whether Vaughn was known in the business or not, could not affect the case. He agreed to become a partner under the old style of "R. R. Pool, Agent." He was a partner, but a dormant partner, and as such could not, of course, be known in the business. Nor was it pertinent, as against creditors, for Vaughn to show that he had not paid the $500 agreed upon. He could. not take advantage of his own wrong. And surely there could be nothing in the alleged fact that Vaughn "received no profits." The agreement is the test, and that entitles him to receive them, if they were made. It might not be quite safe to hold that a failure on the part of its members to "receive profits" from a partnership, may be a good defence against creditors of the partnership.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.