1372

Mary B. DURR, as Executrix of the Estate of John A. Durr, deceased, Appellant v. James T. McELRATH, M.D., individually and as general partner of North Hills Medical Clinic and Diagnostic Center, Michelle Essman as Executrix of the Estate of Thomas Michael Essman, M.D., and North Hills Medical Clinic and Diagnostic Center, a general partnership, Respondents.

(382 S. E. (2d) 20)

Court of Appeals

*Michael L. Rudasill*, Spartanburg, *for appellant.*

*G. Dewey Oxner, Jr.*, of *Haynsworth, Marion, McKay & Guerard*, Greenville, *for respondents.*

Heard June 13, 1989.

Decided July 10, 1989.

GOOLSBY, Judge:

In this medical malpractice case brought under the wrongful death and survival statutes, the appellant Mary B. Durr, as Executrix of the Estate of John A. Durr, deceased, complains about the failure of the trial court to charge three of her requests to charge and about a certain portion of the trial court's general instructions. The jury found in favor of the respondents James T. McElrath, M.D., individually and as a general partner of the North Hills Medical Clinic and Diagnostic Center, Michelle Essman, as Executrix of the Estate of Thomas Michael Essman, M.D., and North Hills Medical Clinic and Diagnostic Center, a general partnership. We affirm.

The deceased died as a result of a massive myocardial infarction on February 26, 1985. He had been a patient of McElrath and of the North Hills Medical Clinic since October 1962. For five years preceding his death, the deceased was seen primarily for gastric and epigastric problems and for yearly "teacher" physicals.

The executrix commenced these actions on February 5, 1987, alleging negligence on the part of the respondents in failing to determine and record a complete history, physical examination, and risk assessment of the deceased for cardiovascular disease, in failing to properly record adequate historical data and physical findings in support of their treatment for epigastric complaints, in failing to conduct any cardiac evaluation, in failing to respond to the deceased's complaint on February 25, 1985, that pain associated with his epigastric complaint was brought on by exertion, and in failing to administer a resting electrocardiogram.

The respondent physicians practiced family medicine.

I.

By Exception No. 2, the executrix charges the trial court with reversible error in failing to give the jury the instructions contained in her Requests to Charge Nos. 8 and 9.

Request to Charge No. 8 reads:

> The law imposes upon a physician the same degree of responsibility in making a diagnosis of a condition or case as in prescribing or administering treatment to an accepted patient. If you find from the evidence that the defendant failed to exercise reasonable care, that degree of care and skill that is employed by the *profession generally*, in diagnosing the decedent's condition, and that as a result thereof the decedent most probably suffered injury and damage, you may find that the defendant was negligent, as the term has been defined.... [Emphasis added.]

> And Request to Charge No. 9 reads:
> If you find from the evidence that the defendant did not exercise the appropriate degree of skill and care, that is employed by the *profession generally* in making his diagnosis of the decedent's condition which is the subject of this action, and that such eroneous [sic] diagnosis resulted in injury to decedent, you may find defendant's inaccurate diagnosis or failure to diagnose this ailment constituted negligence.... [Emphasis added.]

The trial court properly refused to charge both of these requests. They state a physician must use that degree of skill and care "that is employed by the profession generally." The degree of skill and care a physician must use in diagnosing a condition, however, is that "which would be exercised by competent practitioners in [the] defendant doctor's field of medicine" and not that which would be exercised by "the profession generally." *Cox v. Lund,* 286 S. C. 410, 414, 334 S. E. (2d) 116, 118 (1985); *cf. Botehlo v. Bycura,* 282 S. C. 578, 320 S. E. (2d) 59 (Ct. App. 1984) (a medical practitioner's duty of care must be measured by the practices and principles of the particular branch of the healing arts in which he is trained and licensed).

## II.

By Exception No. 4, the executrix assigns the trial court with reversible error in failing to charge the jury her Request to Charge No. 10.

The latter reads:

> If the defendant, as an aide [sic] to his diagnosis of the ailment which is the subject of this action, can be found not to have availed himself of *all* scientific facilities available to him so that he could obtain the best factual data on which to predicate his diagnosis, you should consider this as a factor in determining whether or not his failure to diagnose the ailment constituted negligence. ... [Emphasis added.]

We discern no error. In South Carolina, the question of whether a physician in making a diagnosis deviated from the applicable standard of care either by not employing a particular procedure or by not ordering a particular test is to be determined by what an ordinary, careful, and prudent physician would have done under the same or similar circumstances. *Cox v. Lund, supra; Botehlo v. Bycura, supra;* see 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* § 249 at 381 (1981) (a physician is negligent in failing to administer a test or examination in aid of diagnosis "if the recognized professional standards of skill and care, existing state of medical knowledge, and the like, require the making of tests or examinations which are generally accepted by the profession. ...").

### III.

The executrix challenges by Exception No. 3 the instruction "as given" by the trial court regarding diagnosis.

But we need not consider this exception and the argument the executrix makes based upon it because she did not direct to the trial court before the jury retired to determine its verdict the criticism she now levels at the instruction. *See* S. C. R. Civ. P. 51 ("No party may assign as error the giving [of] ... an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection."); *Belue v. City of Greenville,* 226 S. C. 192, 84 S. E. (2d) 631 (1954) (the Supreme Court will not consider on appeal a contention regarding the trial court's jury instructions that was not raised at trial); 4 C.J.S. *Appeal & Error* § 306 at 959

(1957) ("[N]o ground or grounds other than those specified will be considered by the appellate court."); *cf. Beck v. Gibson*, 268 S. C. 627, 235 S. E. (2d) 716 (1977) (an appellant cannot claim error regarding the admission of certain testimony where the appellant did not object on the ground upon which he urges reversal in his exception).

Affirmed.

GARDNER and CURETON, JJ., concur.